IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| MIRON REYNOLDS, ) <br> ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> ISLANDS MECHANICAL CONTRACTORS, ) <br> INC., ) <br> ) <br> ) <br> Defendant. ) <br> _____) | CIV. NO.: 09-cv-83 |

## MEMORANDUM OPINION

Finch, Senior Judge

THIS MATTER comes before the Court on the motions of defendant Islands Mechanical Contractors Inc. ("IMC") to compel arbitration and stay the proceedings ("motion to compel") and to strike an exhibit included in plaintiff Miron Reynolds' opposition. Reynolds opposes the motion to compel and requests limited discovery to ascertain potential arbitration costs.[1]

**I.      Background**

In February 2008, Reynolds was hired by IMC. On September 26, 2008, IMC requested that Reynolds execute an employment agreement (the "Agreement"). Reynolds complied but

---
[1] IMC asks the Court to strike Reynolds' Exhibit B-1. IMC contends that Exhibit B-1, which consists of an investigative report of the Virgin Islands Department of Labor ("Investigative Report") and an affirmation by Reynolds' counsel regarding the authenticity of the Investigative Report, has no bearing on the issue of whether Reynolds agreed to arbitrate his employment claims against IMC and should thus be stricken from the record. The Court notes that Rule 12(f) of the Federal Rules of Civil Procedure, permits the court to "strike from *a pleading* an insufficient defense or any redundant, immaterial, impertinent or scandalous matter" (emphasis added.)   Rule 12(f) is thus normally addressed to the sufficiency of a pleading or defense rather than an exhibit attached to a response to a motion. *See, e.g., Crystal Poole v. Gee*, 2008 WL 3367548, at *2 (M.D. Fla. 2008). However, Court, having addressed the motion to compel without recourse to Exhibit B-1, denies the motion to strike as moot.

contends that he was pressured to sign the agreement and was given inadequate time to review it. (Pl's Opp. at 9 (citing Reynolds Aff. ¶¶ 6-8.)

Paragraph 3 of the Agreement is entitled "Compensation" and states that:

> During the period of employment, the Employer agrees to compensate the Employee for services rendered under this Agreement as follows:
>
> Employee shall initial one of the following:
>
> _____I elect to resolve disputes with Employer by arbitration in accordance with Paragraph 8 of this Agreement, and agree to accept $25.00 per hour as my initial, normal rate of compensation.
>
> _____I elect to resolve disputes with Employer through the Virgin Islands courts in accordance with Paragraph 9, and agree to accept $23.00 per hour as my initial, normal rate of compensation.
>
> **Note: If you fail to initial either of the above provisions and you sign this agreement, then you will be deemed to have elected to resolve disputes by arbitration as set forth above.**

(Mot. to Compel, Ex. A, Agreement ¶ 3) (emphasis in original).

Plaintiff initialed the option to earn $25.00 per hour in exchange for resolving disputes with IMC by arbitration. The disputes that are to be resolved through arbitration are set forth in Paragraph 7 of the Agreement, which provides:

> If Employee has so elected in paragraph 3 of this Agreement, the parties agree that any dispute or claim concerning:
>
> a. this agreement,
> b. the terms or conditions of employment (including, without limitation, claims relating to benefits; payments; allegations of discrimination, retaliation and/or "whistleblowing"; or termination);
> c. any claims for personal injury or property damage in any way related to my employment, or arising out of my presence on or about the premises of the Virgin Islands Water and Power Authority property(ies) in the U.S. Virgin Islands; or
> d. whether any dispute is arbitrable;
>
> will be settled by arbitration.

(Agreement ¶ 7.)

In March 2009, IMC terminated Reynolds' employment. (Reynolds Aff. ¶ 9.) After he was terminated, Reynolds filed claims of discrimination against IMC with the Equal Employment Opportunity Commission and the Department of Labor. (Compl. ¶ 4.) Plaintiff also cooperated with the Virgin Islands Department of Labor in an ongoing investigation against IMC. (Opp. at 3.) Following Reynolds' termination, Reynolds alleges that IMC made the false public statements that Reynolds had refused to obey company instructions on how to operate a crane and negligently caused $50,000 worth of damages to one of IMC's cranes. (Compl. ¶¶ 5-6.) Reynolds alleges that these statements were made in retaliation for his cooperation with the Department of Labor investigation. (Opp. at 3.)

On October 21, 2009, Reynolds brought this action, alleging that IMC's statement that he damaged IMC's crane was defamatory. IMC responded with the instant motion to compel arbitration. Reynolds opposes arbitration on the grounds that he did not knowingly and voluntarily agree to arbitrate his claims and that the arbitration agreement is unconscionable.

## II.  Standard of Review

The enactment of the Federal Arbitration Act ("FAA") established a strong federal policy in favor of the resolution of disputes through arbitration. *Alexander v. Anthony Intern., L.P.*, 341 F.3d 256, 263 (3d Cir. 2003) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Accordingly, "federal law presumptively favors the enforcement of arbitration agreements." *Id*. "A party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration." *Id*. (citing 9 U.S.C. §§ 3-4) (citation omitted). However, a court should not order arbitration unless it is "satisfied that the making of

the agreement for arbitration ... is not in issue." *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980) (citing 9 U.S.C. § 4)).

Here, Reynolds challenges the validity of the arbitration agreement, arguing that he did not assent to its terms. In determining whether a valid agreement to arbitrate exists, courts use a summary judgment standard, compelling arbitration only where there is "no genuine issue of fact concerning the formation of the agreement" to arbitrate. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 159 (3d Cir. 2009) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980). The party who opposes the motion to compel receives "the benefit of all reasonable doubts and inferences that may arise." *Par-Knit Mills*, 636 F.2d at 54. However, the opposing party must establish more than a "mere existence of a scintilla of evidence" in support of its position. *Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l, Inc.*, 51 V.I. 1116, 1120 (D.V.I. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In addition, while the party moving for arbitration carries the burden of demonstrating that an arbitration agreement exists, the opposing party must show that there is a genuine issue of material fact regarding their defenses to the arbitration agreements. *Fitz v. Islands Mechanical Contractor, Inc.*, 2010 WL 2384585, at *3 (D.V.I. June 9, 2010) (citing *Lloyd v. Hovensa*, 369 F.3d 263, 274 (3d Cir.2004). If a genuine issue of fact is present, a trial must be held to determine whether an arbitration agreement exists. 9 U.S.C. § 4.

### III. Discussion

#### A. Knowing and Voluntary Waiver

To determine whether the parties have agreed to arbitrate, a court applies "ordinary state-law principles that govern the formation of contracts." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 524 (3d Cir.2009) (citations omitted).

"Under Virgin Islands law, the essential prerequisites for the creation of a valid contract are a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." *Virgin Islands Water & Power Authority v. General Electric International, Inc.*, 51 V.I. 1116, 1121 (D.V.I. 2009) (citing The Restatement (Second) of Contracts § 17); *see also Univ. of V.I. v. Petersen-Springer*, 232 F. Supp. 2d 462, 469 (D.V.I. 2002) (same).[2] The outward expression of assent rather than subjective intent is the basis for determining whether a party entered into an agreement. *Morales v. Sun Constructors, Inc*., 541 F.3d 218, 221 (3d Cir. 2008). Thus, "a mental reservation of a party to a bargain does not impair the obligation he purports to undertake." *Id.* (citing Restatement (Second) of Contracts § 17). A signature indicates assent and thus binds the signatory to the contract "unless he or he or she can show special circumstances relieving him or her of such an obligation." *National Financial Partners Corp. v. Cunning*, 2009 WL 1939818, at *3 (D.V.I. July 7, 2009) (quoting *Adams v. Am. Residential Servs., L .L.C*., 2003 U.S. Dist. LEXIS 26478, at *14 (D.D.C. May 8, 2003)).

Reynolds concedes that he signed the Agreement, but maintains that the signature is not proof that he assented to the arbitration provision. First, he contends that he did not knowingly and voluntarily waive his right to a jury trial. Reynolds, arguing that the right to a jury trial is a constitutional right, contends that where a constitutional right is at stake, Virgin Islands law requires that the party surrendering that right must do so knowingly and voluntarily. (Opp. at 7.) Indeed, the Virgin Islands Code provides that "[a]n agreement that waives a right guaranteed by the Constitution of the United States, is unenforceable, unless the waiver of the right is agreed to knowingly and voluntarily." 5 V.I.C. § 815.

---

[2] "The rules of the common law, as expressed in the restatements of the law . . . shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." 1 V.I.C. § 4.

The FAA allows for the revocation of an arbitration agreement on grounds that "exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court, focusing on the word "any" in the statute, has concluded that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (citations omitted). Accordingly, "a court can decline to enforce such a contract if and only if the party resisting arbitration can point to a generally applicable principle of contract law under which the agreement could be revoked." *Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 183 (3d Cir.1998) overruled on other grounds by *Green Tree Financial Corp. Alabama v. Randolph*, 531 U.S. 79 (2000).

However, this Court has determined that § 815 is not a generally applicable principle of contract law because it "does not apply to 'any contract'" but is limited to a specific type of contract, namely, those involving a waiver of constitutional rights. *Fitz*, 2010 WL 2384585, at *6. The Court thus held that "[b]ecause section 815 places contracts concerning constitutional rights 'in a class apart from any contract and singularly limits their validity,'" § 815 is preempted by the FAA. *Id*. at *7 (citing *Doctor's Assoc*., 517 U.S. at 688).[3] Thus, Reynolds' contention that he did not enter into the agreement to arbitrate knowingly and voluntarily, whether true or not, cannot be the basis for invalidating the Agreement.

**B. Unconscionability**

The Court has expounded upon the doctrine of unconscionability in the context of an arbitration agreement on numerous occasions. It is well-established that unconscionability is a

---

[3]The Third Circuit has previously determined that applying a heightened "knowing and voluntary" standard to arbitration agreements is inconsistent with the FAA. *Morales v. Sun Constructors, In c*., 541 F.3d 218, 224 (3d Cir. 2008) (citing *Seus*, 146 F.3d at 183-84). Because the Third Circuit had not specifically addressed whether § 815 was preempted by the FAA, this Court conducted the analysis cited above.

6

generally recognized contract defense that may be used to set aside an arbitration agreement. *Plaskett v. Bechtel Intern., Inc*., 243 F. Supp. 2d 334, 339 (D.V.I. 2003) (citing *Doctor's Associates, Inc*., 517 U.S. at 687). The doctrine of unconscionability involves both "procedural" and "substantive" elements. *Alexander v. Anthony Intern., L.P*., 341 F.3d 256, 265 (3d Cir. 2003) (citations omitted). "Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement." *Id*. This element is normally satisfied where the contract is one of adhesion, *i.e.* "one which is prepared by the party with excessive bargaining power who presents it to the other party for signature on a take-it-or-leave-it basis." *Id*. (quotations omitted). Substantive unconscionability "refers to terms that unreasonably favor one party to which the disfavored party does not truly assent." *Id*. To find that an agreement is unconscionable, both elements must be proven: first, that the contractual terms are unreasonably favorable to the drafter and (2) that there is no meaningful choice on the part of the other party regarding acceptance of the provision." *Id*. at 265-66.[4] The party seeking to invalidate the arbitration clause generally bears the burden of proving that the contract or provision of the contract is unconscionable. *Harris v. Green Tree Fin. Corp*., 183 F.3d 173, 181 (3d. Cir. 1999). If the court determines that a term of a contract is unconscionable, it may "refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result."

---

[4] The Restatement (Second) of Contracts § 208 cmt. d. explains that

> A bargain is not unconscionable merely because the parties to it are unequal in bargaining position, nor even because the inequality results in an allocation of risks to the weaker party. But gross inequality of bargaining power, together with terms unreasonably favorable to the stronger party, may confirm indications that the transaction involved elements of deception or compulsion, or may show that the weaker party had no meaningful choice, no real alternative, or did not in fact assent or appear to assent to the unfair terms.

*Alejandro v. L.S. Holding, Inc.*, 310 F. Supp. 2d 745, 748 (D.V.I. 2004) (citing Restatement (Second) of Contracts § 208).

Reynolds contends that the agreement is procedurally unconscionable because there was a gross inequality in bargaining power and because Reynolds' signature on the Agreement was a condition of employment. Reynolds argues that the Agreement is substantively unconscionable because it is "excessively one-sided, deceptive[,] and cost prohibitive," and it precludes judicial review of the arbitrator's decision. (Opp at 12-13, 19.)

In this case, the Agreement, with regard to the arbitration provision, was not presented on a "take-it-or-leave-it" basis: Reynolds was given the choice to either arbitrate his claims, with the incentive of a higher hourly wage, or to resolve all claims within the court system. (Exhibit A at 1, Doc. 4-1.) While the facts alleged indicate that the parties did not hold equal bargaining power, "more than a disparity in bargaining power is needed in order to show that an arbitration agreement was not entered into willingly." *Brisco v. Schreiber*, 2010 WL 997379, at *3 (D.V.I. Mar. 16, 2010) (citing *Great Western Mortg. Corp. v. Peacock*, 110 F.3d 222, 229 (3d Cir.1997)); *see also Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1118 (3d Cir.1993) (rejecting argument that arbitration clause was adhesive merely because there was a disparity in bargaining power)). Moreover, the fact that the plaintiff had a choice to resolve disputes within the court system or through arbitration undermines Reynolds' argument that he was coerced into agreeing to arbitrate. This is not a case where "the employee had the choice of either signing the arbitration agreement or foregoing employment." *Richardson v. Virgin Islands Port Authority*, 2010 WL 1641154, at *14 (D.V.I. April 21, 2010) (citations omitted). The Court concludes that the contract was not one of adhesion.

Assuming arguendo that Reynolds had persuaded the Court that he had no choice but to agree to arbitrate, the Court would still have to determine whether the Agreement was substantively unconscionable.

Reynolds first posits that the Agreement is substantively unconscionable because it forces him to relinquish his right to a jury trial even if he opts out of arbitration. (Opp. at 14.) The Agreement provides that if the employee elects to resolve disputes through the Virgin Islands courts, the parties agree to

> [K]nowingly, voluntarily, intentionally, irrevocably and unconditionally waive the right either of them may have to a trial by jury with respect to any suit, legal action, litigation or counterclaim based hereon, or arising out of, under or in connection with this agreement or the terms and conditions of employment . . . .

(Mot. to Compel, Ex. A.)

The Court notes that the terms of Agreement indicate that *both* parties forego the right to a jury trial. Thus, there is no evidence that this provision of the Agreement unreasonably favors IMC. *Alexander*, 341 F.3d at 265. In addition, the waiver of a jury trial does not automatically render a contract unconscionable. *See, e.g., Harrington v. Atlantic Sounding Co., Inc.*, 602 F.3d 113, 126 (2d Cir. 2010) ("[i]t is well-settled that waivers of jury trial are fully enforceable under the FAA") (collecting Supreme Court cases). Such an argument stretches the concept of unconscionability beyond its limits and ignores "the liberal federal policy favoring arbitration agreements." *Perry v. Thomas*, 482 U.S. 483, 489 (1987). As the Third Circuit has explained, the problem of substantive unconscionability has to do with an "unfair advantage" being conferred upon the party with greater bargaining power. *Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191, 204 (3d Cir. 2010). The following excerpt from *Nino* highlights this concern and demonstrates that it is not access to the courts which determines whether a contract is valid but rather whether the dispute procedure is fair:

> By agreeing to arbitration in lieu of litigation, the parties agree to trade the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration, but they do not accede to procedures utterly lacking in the rudiments of even-handedness.

*Id*.

The Court concludes that the Agreement is not rendered unconscionable because it requires Reynolds to choose between arbitration or a bench trial.

Reynolds also argues that the Agreement is invalid because of a lack of consideration. That argument is also without merit because "[w]hen both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced." *Plaskett*, 243 F. Supp. 2d at 338 (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir.2002).[5]

Reynolds also contends that the Agreement is unconscionable because it precludes judicial review of the arbitrator's decision. The FAA provides for the vacation of an arbitration award in specified circumstances, such as where the award was procured by fraud or there was impartiality in the arbitrators. 9 U.S.C. § 10. In this case, the Agreement provides that "[t]he decision of the arbitrators . . . shall be exclusive, final, and binding on both parties . . . ." (Agreement, ¶ 7.) The Court finds that this language does not curtail judicial review. The language of the Agreement can be distinguished from those arbitration agreements which provide that "the award shall be final and binding and *not subject to review or appeal.*" *Hooters*

---

[5] Reynolds here mounts an unconscionability argument on the basis that the Agreement purports to deprive him of his rights under Virgin Islands law to be protected from discharge without cause. (Opp. at 15 (citing 24 V.I.C. § 76.) However, the Court's sole concern here is whether the arbitration provision is valid. "[A] court compelling arbitration should decide only such issues as are essential to defining the nature of the forum in which a dispute will be decided." *Great Western Mortg. Corp. v. Peacock*, 110 F.3d 222, 230 (3d Cir. 1997). A party challenging the waiver of state law rights unrelated to the provision of a judicial forum must present such a challenge to the arbitrator, "who will determine the validity and enforceability of the waiver of asserted state law rights." *Id*. at 233.

*of America, Inc. v. Phillips*, 39 F. Supp. 2d 582, 602 (D.S.C. 1998) (finding that such language in combination with other factors, rendered the arbitration agreement unconscionable).

Finally, Reynolds argues that the Agreement is unenforceable because arbitration would be prohibitively expensive. Reynolds claims that he could not afford to pay the fees associated with compensating the arbitrator, and that the possibility of having to reimburse IMC for its fees precludes him from bringing suit.

The Agreement provides for the following allocation of costs:

> If a claim subject to the arbitration is initiated by the Employee, the Employee shall be responsible for paying the first $100 charged by the AAA for filing fees and for hearing fees, respectively. The Employer shall pay the balance of the filing fees and hearing fees, subject to the right of the Employer to recover such fees from the Employee in the event the Employer prevails in the arbitration . . . The prevailing party in the arbitration shall be entitled to recover its costs and reasonable attorney's fees as provided in Title 5, Section 541, of the Virgin Islands Code, which fees and costs shall be determined and awarded as part of the final arbitration award.

(Agreement ¶ 7).

Reynolds asserts that the Agreement incorporates the Commercial Rules ("Rules") of the American Arbitration Association ("AAA") and that the Rules require Reynolds to pay half of the arbitrator's compensation and other expenses. (Opp. at 17.)[6] IMC contends that after the employee pays $100 for the filing fee and $100 for the hearing fees, IMC will be responsible for "the remaining balance of all fees, which includes the arbitrator's fee." (Reply at 4.) However, paragraph 7 of the Agreement only addresses the payment of filing and hearing fees. The Rules state that "[t]he fees cover AAA administrative services; *they do not cover arbitrator*

---

[6] The Agreement proves that "the arbitration proceedings shall be conducted under the Commercial Arbitration Rules of the American Arbitration Association ("AAA") in effect at the time a demand for arbitration under the rules is made." (Agreement, ¶ 7.)

11

*compensation or expenses*, if any, reporting services, or any post-award charges incurred by the parties in enforcing the award." (Opp. Ex. B3, AAA Commercial Arbitration Rules, "Administrative Fees") (emphasis added). Moreover, Rule 50 of the AAA provides that

> All . . . expenses [apart from the expense of paying for the party's witness], including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.

(Opp. Ex. B3, AAA Commercial Arbitration Rules.)

Thus, notwithstanding IMC's assertion that it would initially bear all costs apart from the initial filing and hearing fees, the terms of the Agreement do not so provide and Reynolds could be required to pay half of the expenses resulting from arbitration of this dispute.

As the Third Circuit has noted, while federal policy favors enforcement of arbitration agreements, enforcement is only appropriate where "the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum" *Blair v. Scott Specialty Gases*, 283 F.3d 595, 605 (3d Cir. 2002) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991)). Accordingly, "an arbitration provision that makes the arbitral forum prohibitively expensive for a weaker party is unconscionable." *Shervington v. Gallows Bay Hardware, Inc.*, 2009 WL 1650414, at *3 (D.V. I. 2009) (citing *Parilla*, 368 F.3d at 284. Whether the prohibitive expense is due to a "fee-splitting" or a "loser pays costs" provision, the burden is on the party seeking invalidation to establish that the costs are prohibitively expensive. *See, e.g., Blair*, 283 F.3d 595, 607 (3d Cir. 2002) (where fee-splitting provision challenged as unconscionable, claimant has the burden to come forward with some evidence to show the projected fees that would apply to their specific arbitrations); *Parilla*, 368 F.3d 269 (3d Cir. 2004) ("Loser pays arbitral costs' provision of arbitration clause in employment agreement

would be unconscionable under Virgin Islands law if employee could establish her inability to pay the costs of arbitration").[7] To meet this burden, the party must show (1) that the projected fees that would apply to his or her specific arbitration; and (2) that the party is unable to pay those fees. *Hall v. Treasure Bay Virgin Islands Corp.*, 2010 WL 926004, at *1 (3d. Cir. 2010) (citing *Parilla*, 368 F.3d at 283-85; *Alexander*, 341 F.3d at 268-69).

A plaintiff who has provided an affidavit asserting limited financial capacity is entitled to "to invoke discovery procedures in the pre-arbitration proceeding in order to assist the claimant in meeting her burden of showing the likelihood of bearing prohibitive costs." *Blair*, 283 F.3d at 608-9. Moreover, the defendant "should also be given the opportunity to meet its burden to prove that arbitration will not be prohibitively expensive, or . . . [to] offer to pay all of the arbitrator's fees." *Id*. at 610. In this case, Reynolds has provided an affidavit indicating that he is unemployed, and significantly in debt. (Reynolds Aff. ¶¶ 10, 14.) Reynolds has also shown that the Rules of the AAA would apply, which could require him to sustain significant expenses. Thus, the Court finds that Reynolds is entitled to limited discovery on the issue of the cost of arbitration.

IV. **Conclusion**

The Court rejects Reynolds' argument that the agreement to arbitrate is invalid because it was not made knowingly and voluntarily. However, the Court will defer ruling on the motion to compel and allow Reynolds limited discovery on the issue of arbitration costs and his ability to pay. Following the time allotted for discovery, Reynolds will have an opportunity to demonstrate that the costs are prohibitive, and IMC will have an opportunity to rebut that

---

[7] The Third Circuit in these cases relied on *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000), in which the Supreme Court held that "where . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92.

13

argument. All other arguments asserted herein regarding unconscionability are rejected for the reasons stated above. A separate order accompanies this memorandum opinion.

**ENTER:**

Dated: November 10, 2010.

_____/s/_____
RAYMOND L. FINCH
SENIOR U.S. DISTRICT JUDGE